**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 06-80278-CIV-MIDDLEBROOKS/JOHNSON**

EDWARD FREDERICK,

                Plaintiff,

v.

JAMES C. McDONOUGH, INTERIM
SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

                Defendants.

_____/

## REVISED REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court pursuant to the Mandate of the Eleventh

Circuit issued December 26, 2008, and pursuant to the Order of Referral entered by

the Honorable Donald M. Middlebrooks on January 8, 2009 with reference to

Petitioner Edward Frederick's Petition for Writ of Habeas Corpus (D.E. #1).[1]  In said

Order of Referral, Judge Middlebrooks referred Petitioner's, Edward Frederick's

("Frederick" or "Petitioner") Petition for Habeas relief to the undersigned United

States Magistrate Judge for Report and Recommendation.  On remand, the Eleventh

---

[1]  Although a Report and Recommendation, followed by an Order adopting same,
already disposed of the above-referenced Petition, the matter has been remanded by
the Eleventh Circuit, resulting in the renewed pendency of the Petition for Habeas
Relief.

1

Circuit instructed the Court to first consider the narrow issue of whether or not Frederick exercised due diligence in discovering the factual predicate for his claim. [2] Should this question be answered in the affirmative, the Court would then go on to conduct a merits-based analysis of the various claims raised.  On October 27, 2009 the undersigned, at the request of the parties, held an evidentiary hearing solely on the issue of timeliness (D.E. #64).  Because the undersigned finds the Petition should be dismissed as untimely, the following analysis shall be so limited.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND GENERALLY</u>

Petitioner, Edward Frederick, is presently confined in the Florida Department of Corrections at Okeechobee Correctional Institution serving life sentences for sexually molesting his underage stepdaughter.  The relevant background facts are as follows. A Second Amended Information dated May 25, 1999  charged Petitioner with sexual battery on a person less than twelve years of age (Counts I and II), and lewd assault of a child under the age of sixteen years (Counts 3 through 7) (D.E. #9, Ex. 1).  On October 6, 1999, a Palm Beach County jury found Petitioner guilty as charged on the two sexual battery Counts and on three of the five Counts of lewd assault (D.E. #9, Ex. 7).[3] Judgment was entered on the verdict on October 7, 1999, at which time Petitioner was sentenced to concurrent life sentences on Counts I and

---

[2]  The Eleventh Circuit's Mandate noted that this was the standard the court should properly have used in determining the applicable triggering date under 28 U.S.C. §2244(d)(1)(D) for purposes of establishing timeliness.

[3]  The jury returned with a not guilty finding on the other two Counts of lewd assault.  D.E. #9, Ex. 7.

II, and to concurrent fifteen year sentences on the three lewd assault Counts (D.E. #9, Ex. 9).[4]

On October 26, 1999, Petitioner filed a Motion for New Trial and Arrest of Judgment, which the trial court denied on October 29, 1999 (D.E. #9, Exs. 11 & 12). Petitioner appealed the denial to the Fourth District Court of Appeal (4th DCA) on November 3, 1999 (D.E. #9, Ex. 13).   He also filed a Rule 3.800(b)(2) motion to correct a sentencing error before the trial court on December 19, 2000 (D.E. #9, Ex. 14), which that court denied on February 23, 2001 (D.E. #9, Ex. 16).

Thereafter, on December 5, 2001, the 4th DCA issued its opinion affirming in part and reversing in part the October 29, 1999 Order, which denied Petitioner's request for a new trial and to arrest judgment (D.E. #9, Ex. 20). The same Order remanded the matter to the trial court for re-sentencing (D.E. #9, Ex. 20). [5]

On December 19, 2001, Petitioner moved for a rehearing or a certification of the December 5th appellate opinion (D.E. #9, Ex. 21), which the 4th DCA denied on April 3, 2002, substituting its original opinion with one that further clarified the need for an evidentiary hearing before re-sentencing, leaving untouched the affirmance

_____

[4]  On October 7, 1999, Petitioner was also declared a sexual predator.  D.E. #9, Ex. 9.

[5]  That reversal and remand did not alter the trial court's conviction, but instead concerned only technicalities regarding the sentence itself based on the amendment to Fla. Stat. § 921.011 (effective on April 18, 1992) and the prior applicability of precedent under Karchesky v. State, 591 So.2d 530 (Fla. 1992) before the statutory amendment; requiring conformance of the written sentence to the court's oral pronouncement on parole; and calling for clarification of the court's intention on the sentence as to Counts I and II, asking for the imposition of two separate sentences (D.E. #9, Ex. 20).

of the conviction (D.E. #9, Ex. 23).  The Fourth DCA's Mandate on this opinion issued on April 19, 2002 (D.E. #9, Ex. 24).  Petitioner was re-sentenced in accordance with the Mandate on August 9, 2002 (D.E. #9, Ex. 52).  There is no record of an appeal of this re-sentencing.

On March 31, 2003, Petitioner filed a Rule 3.850 Motion, seeking post conviction relief (D.E. #9, Ex. 25), which he later withdrew with court approval on July 24, 2003 (D.E. #9, Ex. 26), refiling a second Rule 3.850 Motion on September 11, 2003 (D.E. #9, Ex. 27).[6]  The court summarily denied the second Rule 3.850 Motion on March 29, 2004 (D.E. #9, Ex.29).  Petitioner appealed the decision to the 4th DCA on April 23, 2004.  (D.E. #9, Ex. 31).  On September 1, 2004, the 4th DCA issued a *per curiam* affirmance of the lower court's Order denying the Rule 3.850 Motion ( D.E. #9, Ex. 33).  <u>Frederick v. State</u>, 884 So.2d 946 (Fla. 4th DCA 2004)(table).  On October 13, 2004, Petitioner filed a Motion for Rehearing, Motion for Rehearing *en banc*, Motion for Issuance of a Written Opinion, and Motion for Certification of Questions of Great Public Importance (D.E. #9, Ex. 34).  This Motion was denied by the 4th DCA on November 10, 2004 ( D.E. #9, Ex. 35). Mandate issued on November 30, 2004 (D.E. #9, Ex.36).

On March 17, 2005, Petitioner filed a Motion to Correct Illegal Sentence and Errors in Scoresheet Calculations under the provisions of Fla.R.Crim.P.  3.800(a) ( D.E. #9, Ex. 37).  The trial court denied the Motion on October 20, 2005 (D.E. #9,

---

[6]  Petitioner twice amended this second post relief motion.  (D.E. #9, Exs. 27 & 28).

Ex. 38) .[7]  The record then reflects a January 27, 2006, acknowledgment of appeal

by the 4th DCA, along with an initial brief bearing the same date (D.E. #9, Exs. 40 &

41).  The 4th DCA issued an order on January 27, 2006 finding the new appeal  filed

untimely, and directing Petitioner to file within fifteen days from the date of that Order

a conformed copy of the order being appealed and any subsequent order tolling the

time for the filing of the Notice of Appeal (D.E. #9, Ex. 42) .  In the meantime,

Petitioner filed with the 4th DCA a Motion to Accept Notice of Appeal as Timely Filed

(D.E. #9, Ex. 43).  On January 31, 2006 Petitioner filed a Supplement to Motion to

Accept Notice of Appeal as Timely Filed (D.E. #9, Ex. 44).  The 4th DCA denied

Petitioner's Motion to Accept Notice of Appeal as Timely Filed on February 7, 2006,

dismissing the appeal (D.E. #9, Ex. 45).

On February 14, 2006 Petitioner filed a Motion for Belated Appeal (D.E. #9,

Ex. 46), which on March 14, 2006, the 4th DCA denied without prejudice and with

leave to re-file by including a necessary sworn petition in full compliance with

Fla.R.App.P. 9.141(c)(3)(F) (D.E. #9, Ex. 47).  Petitioner complied by filing on March

20, 2006, an Amended Motion for Belated Appeal, which the 4th DCA granted on

April 25, 2006 (D.E. #9, Exs. 48 & 49).   Subsequently, on July 19, 2006, the

appellate court denied the Rule 3.800(a) Motion (D.E. #9, Ex. 51).  The 4th DCA

---

[7]  The record shows an Order dated December 12, 2005, denying a Motion for clarification
and/or Rehearing on the Motion to Correct Illegal Sentence and Errors on Scoresheet
Calculations (D.E. #9, Ex. 39).  That Order upholds the denial dated October 20, 2005, and
corrects a scrivener's error on the reference to the original verdict.  Id.

issued the Mandate on that denial on September 15, 2006 (D.E. #9, Ex. 53).

## II.  FACTUAL AND PROCEDURAL BACKGROUND RELATIVE TO THE INSTANT PETITION

Petitioner filed the instant Habeas Petition on March 28, 2006 pursuant to 28 U.S.C. §2254 (D.E. #1).  The District Court, adopting the Report and Recommendation of the undersigned United States Magistrate Judge, dismissed the Petition as untimely pursuant to 28 U.S.C. §2244(d)(1) (D.E. #24).  In so ruling, the District Court, on recommendation of the undersigned, rejected Petitioner's "newly discovered evidence" claim under §2244(d)(1)(D) finding it was insufficient to merit federal habeas relief in that the facts contained in the affidavit upon which the "newly discovered evidence" claim was based, would not have altered the outcome of Petitioner's's trial (D.E. #24).  The newly discovered evidence consists of an August 28, 2003 Affidavit of Petitioner's son and victim's brother, Edward Frederick III ("Eddie"), in which Eddie testifies that he perjured himself at Frederick's trial upon prompting by the prosecutor, who at the time of trial told Eddie to support whatever his sister said.

Petitioner appealed this decision to the Eleventh Circuit on August 21, 2007 (D.E. #26).  On December 26, 2008, the Eleventh Circuit issued its Mandate reversing and remanding the District Court's decision on the basis the Court utilized the wrong standard for determining the appropriate triggering date under 28 U.S.C. §2244(d)(1) (D.E. #38). Frederick v. McNeil, No. 07-13970, 2008 WL 4925946, at

6

*2 (11th Cir. Nov. 18, 2008). Specifically, the Eleventh Circuit found that in determining whether §2244(d)(1)(D)'s "newly discovered evidence" provision applied to the facts presented, the Court improperly focused on whether or not Petitioner's claimed newly discovered evidence was sufficient to merit federal habeas relief, when instead it should have confined its analysis to whether or not the Petitioner exercised due diligence in discovering the factual predicate for his claim. Id.

Accordingly, the Eleventh Circuit reversed and remanded the matter for the purpose of determining "whether or not the state prisoner exercised due diligence in discovering the factual predicate for his claim." Id. On October 27, 2009 the undersigned, at the request of the parties, held an evidentiary hearing solely on the issue of timeliness (D.E. #64). Based upon the argument and testimony presented, together with the pleadings of the parties, the evidence of record and the pertinent case law, the undersigned concludes that the factual predicate of Petitioner's claims could have been discovered previously through the exercise of due diligence, and on this basis recommends dismissal of Frederick's Petition as untimely.

### III.   <u>LEGAL ANALYSIS</u>

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), imposes a one-year limitations period for the filing of a federal habeas corpus petition by a person in custody pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1). The one-year limitations period runs from the

latest of any one of the following four events: (A) the date on which a judgment becomes final, calculated from the conclusion of direct review or from the expiration of the time allowed to seek such review; (B) the date on which the impediment to filing an application caused by unlawful State action was removed; (C) the date on which the United States Supreme Court newly recognized an asserted constitutional right and made that recognition applicable retroactively; or (4) the date on which, as a result of exercising due diligence, the petitioner could have discovered the factual predicate of the claim or claims presented.  28 U.S.C. § 2244(d)(1)(A)-(D).  Rainey v. Sec'y for the Dep't of Corr., 443 F.3d 1323, 1326 (11th Cir. 2006); Jones v. United States, 304 F.3d 1035, 1038 (11th Cir. 2002).[8]

Respondent invokes §2244(d)(1)(A) and contends that Frederick's Habeas Petition is time-barred in that four hundred ninety-one (491) untolled days elapsed between the date Frederick's Conviction became final on July 3, 2002, and the date on which he filed the instant Petition on March 28, 2006, thereby exceeding

---

[8]  Because the limitations period under 28 U.S.C. § 2244 is not a jurisdictional bar, the doctrine of equitable tolling may in some instances be applied to defeat a §2244 limitations claim. The doctrine of equitable tolling applies "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000) (quoting Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999)). The equitable tolling doctrine, however, is considered an extraordinary remedy very rarely granted. Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000)(noting that "equitable tolling" comes into play "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence," and remarking on its character as "an extraordinary remedy which is typically applied sparingly.").

AEDPA's mandatory one-year limitations period.[9]   Frederick   counters   by

contending that his Petition was timely filed under §2244(d)(1)(D), in that it was

based on newly discovered evidence. The factual predicate of Petitioner's "newly

discovered evidence" claim is an August 28, 2003 Affidavit of Frederick's son, Eddie,

in which Eddie maintains that he perjured himself at trial at the prodding of the

prosecutor who told him to testify in a manner that would corroborate his sister's

version of the events. See Affidavit of Edward Frederick III (D.E. #12) ("Eddie Aff.").

Thus, according to Petitioner, using the August 28, 2003 Affidavit as the "triggering"

date under §2244(d)(1)(D), the total number of untolled days before the filing of the

Petition on March 28, 2006 is one hundred eighty-seven (187), placing the filing of

his Petition well within AEDPA's limitations period. The Eleventh Circuit has

remanded this matter for the purpose of determining, at the outset, "whether or not

the state prisoner exercised due diligence in discovering the factual predicate for his

claim" such that §2244(d)(1)(D)'s "newly discovered evidence" provision can be

utilized as a triggering date for purposes of falling within AEDPA's one-year

limitations period.

    Before addressing Petitioner's "due diligence," or lack thereof, however, the

---

[9]   Petitioner's conviction became "final" for purposes of §2244(d)(1)(A) on or about July 3, 2002, when the ninety-day period in which to seek *certiorari* from the United States Supreme Court expired.  See 28 U.S.C. §2244(d)(1); Bond v. Moore, 309 F.3d 770, 773 (11th Cir. 2002)(holding that one-year limitations period for state inmate's filing of federal habeas petition began to run when the time expired for filing a petition for *certiorari* with the United States Supreme Court).

Court begins by setting forth the various dates and tolling periods applicable to Petitioner's instant claim.  In this regard the Court notes that putting aside the several pages of unsupported argument contained in Petitioner's Objection to the undersigned's earlier Report and Recommendation regarding the confusing nature of AEDPA's triggering dates and the sacrosanct nature of Habeas Petitions in general,[10]  there is no real dispute by Petitioner, on legal grounds anyway, that absent a finding the proffered affidavit constitutes "newly discovered evidence" under §2244(d)(1)(D), the time calculation as argued by Respondent and adopted by the Court earlier, brings Petitioner's Habeas Petition outside AEDPA's 1-year filing period.

Fredrick's conviction and sentence became final on or about July 3, 2002, the date the ninety-day period in which to seek *certiorari* from the United States Supreme Court expired on the April 3, 2002 opinion affirming in part and reversing

---

[10] See Pet. Obj. to R&R (D.E. #23, pp.1-4); Pet. Reply (D.E. #12).  Petitioner's counsel also raises equitable tolling as a means of getting around AEDPA's one-year limitations period in his Objection to the undersigned's earlier Report and Recommendation.  Pet. Obj. to R&R (D.E. #23, p. 4). The basis of his claim is that "because the one year time period is not jurisdictional" the Court should "grant Petitioner equitable tolling based on his counsel's genuine belief in the validity of argument presented herein...[regarding timeliness]." Id.  As the Court previously stated, see *supra* p. 8, n.8, the equitable tolling doctrine is not available for mere attorney negligence. Steed, 219 F.3d at 1300.  The doctrine is only available "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Scott v. Duffy, 2010 WL 1274228, *1 (11th Cir. April 10, 2010). For a petitioner to be entitled to equitable tolling, there must be *"egregious attorney misconduct,"* such as *"proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part."* Melson v. Allen, 548 F.3d 993, 1001 (11th Cir.2008) (quotation omitted)(emphasis added).  This is clearly not the case here.

and remanding in part Petitioner's conviction and sentence on direct appeal (D.E. #9, Ex. 23). <u>Frederick v. State</u>, 814 So.2d 1123 (Fla. 4th DCA 2002). <u>See</u> 28 U.S.C. §2244(d)(1); <u>Bond v. Moore</u>, 309 F.3d 770, 773 (11th Cir. 2002)(holding that one-year limitations period for state inmate's filing of federal habeas petition began to run when the time expired for filing a petition for *certiorari* with the United States Supreme Court); <u>Close v. United States</u>, 336 F.3d 1283, 1286 (11th Cir. 2002)(explaining that the 90 day period runs from the date of entry of judgment and not from the date the mandate issued).

In arriving at April 3, 2002 as the date the judgment became final, the undersigned notes that while the Fourth District Court of Appeal reversed in part and remanded for   re-sentencing subsequent to that date, and the trial court re-sentenced Petitioner in accordance with the mandate on August 9, 2002, these facts do not extend the finality date of the judgment and sentence for purposes of AEDPA, in that the record is undisputed that none of the issues addressed at re-sentencing are raised in the instant habeas Petition.[11]  Moreover, Petitioner did not appeal the Re-sentencing Order.[12]

---

[11]  <u>See</u> *Supra,* p.3 n.5

[12]  Even were one to apply the August 9, 2002 re-sentencing date as the date of "final judgment," the result would be the same.  In Florida where, as here, a defendant does not file an appeal, the order becomes final upon expiration of the thirty-day (30) appeal period. Fla. R. App. P., 9.110(b); <u>Demps v. State</u>, 696 So.2d 1296, 1297, n.1 (Fla. 3d DCA 1997); <u>Ramos v. State</u>, 658 So.2d 169 (Fla. 3d DCA 1995). Thus, even giving Petitioner the benefit of applying the later start date of September 9, 2002, the untolled days are reduced by only 67 days (time between July 3, 2002 and September 9, 2002) resulting in 424 untolled days, instead of the 491 claimed, still significantly over the 365

Therefore, utilizing July 3, 2002 as the final date of judgment for AEDPA purposes would ordinarily mean that Petitioner had 365 days  from July 3, 2002, or until July 3, 2003, in which to file a timely federal habeas petition. However, principles of equitable tolling come into play in this case, extending the amount of time Petitioner had before the instant Petition was required to be filed. Under  the Act the 1-year limitations period is tolled for the "time during which a properly filed application for State post-conviction or other collateral review ... is pending." §2244(d)(2).   The time that an application for state post-conviction review is "pending" includes the period between: (1) a lower court's adverse determination; and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law. Carey v. Saffold, 536 U.S. 214 (2002); Evans v. Chavis, 546 U.S. 189, 191-92 (2006).

Petitioner filed his first Rule 3.850 Motion on March 31, 2003 (D.E. #8, Ex.25). At this point 270 days had elapsed since Petitioner's time-clock started running for purposes of AEDPA.  Once filed, the limitation period was tolled and remained tolled until July 24, 2003, the date on which the trial court granted Petitioner's Motion to Withdraw the Rule 3.850 pleading. (D.E. #8, Ex. 26).  From there 48 untolled days

---

day time period permitted under ADEPA.   Nor for the reasons stated in Respondent's Response Brief (D.E. #8, pp10-11, n.2), did the Petitioner's belated appeal of the Order on January 17, 2006 help him in any way, as that appeal ,having  been deemed untimely filed, can not be the basis for tolling a claim. See Evans v. Chavis, 546 U.S. 189, 197-98 (2006)  None of this by the way is disputed in Petitioner's Reply brief, nor in any other way challenged. (See D.E. #12).

elapsed before Petitioner signed and submitted his second Rule 3.850 Motion. (D.E. #8, Ex. 27). This second Rule 3.850 Motion tolled the limitations period yet again, until November 30, 2004, the date on which the Fourth District Court of Appeal issued its Mandate in the appeal from the lower court's order. (D.E. #8, Ex.36); Artuz v. Bennet, 531 U.S. 4, 8 (2000); Evans, 546 U.S. at 197-98.

Thereafter, an additional 106 untolled days elapsed until March 17, 2005, the date on which the Petitioner filed his Rule 3.800(a) Motion. (D.E. #8, Ex.37).  The filing of this motion tolled the limitations period until January 12, 2006, which is when the thirty-day period in which to file an appeal of the trial court's order denying the Rule 3.800(a) expired.  At this point the clock began running once again for a final period of 67 days until March 20, 2006, when Petitioner properly filed his Amended Petition for Belated Appeal in conformance with Fla. R. App. P., 9.141(c)(3)(F) (D.E. #8, Ex. 47).[13]  Because mandate on that motion had not yet issued as of the time Petitioner filed the instant Habeas Petition on March 28, 2006, the limitations period remained tolled.  This calculation brings the number of untolled days before Plaintiff filed his Habeas Petition to 491, far outside the 365-day period required under ADEPA.

The question thus presented is whether Petitioner, through the exercise of due

---

[13]   The Court notes that the February 16, 2006 unsworn Petition for Belated Appeal did not toll the running of the limitations period because it was not "properly filed," in accordance with State procedural rules, as the Fourth District Court of Appeal found (D.E. #8, Ex. 47).  Evans, 546 U.S. at 197-98.

diligence, could have discovered the factual predicate of his "newly discovered evidence" claim, namely that his son, Eddie, testified untruthfully at Petitioner's trial at the prodding of the State prosecutor who advised him to corroborate his sister's story, prior to when Eddie provided him with an affidavit to that effect on August 28, 2003. [14]  If the Court finds the factual predicate of Petitioner's claim could have been discovered previously through the exercise of due diligence, for the reasons set forth earlier, the undersigned believes the Petition must be dismissed as untimely.  If, on the other hand, the Court finds that Petitioner, through the exercise of due diligence, could not have discovered the factual predicate of his claim prior to Eddie having provided him with the subject affidavit on August 28, 2003, then as a matter of law Frederick's Petition for Writ of Habeas Corpus must be deemed to have been timely filed, and the Court must proceed to an analysis of the merits.  Id. Frederick v. McNeil, No. 07-13970, 2008 WL 4925946, at *2 (11th Cir. Nov. 18, 2008).

For the following reasons the Court finds no basis for delaying the commencement of AEDPA's one-year limitations period under § 2244(d)(1)(D), which provides for delayed commencement of the statutory period when there is a newly discovered factual predicate for a petitioner's claim which could not have been discovered earlier through the exercise of due diligence. Id.; Thomas v. Secretary, 2010 WL 1708893, *2 (M.D. Fla. 2010). Under §2244(d)(1)(D) the limitations period begins running from "the date on which the factual predicate of the claim or claims

---

[14] See Eddie Aff., (D.E. #12).

presented could have been discovered through the exercise of due diligence." <u>Id</u>. The relevant inquiry in this case, therefore, is not when Petitioner actually discovered the untruthful nature of Eddie's testimony and the motivation behind it, <u>i.e.</u>, the coercion of the prosecutor, but when Petitioner could have learned of these facts through the exercise of reasonable diligence. <u>Melson v. State</u>, 548 F.3d 993, 999 (11th Cir. 2008)(holding that "[t]he limitations period under §2244(d)(1)(D) begins when the factual predicate of a claim could have been discovered using due diligence, not when it was actually discovered.")(citing <u>Schlueter v. Varner</u>, 384 F.3d 69, 74 (3d Cir.2004)).

In <u>Melson</u> the Eleventh Circuit made clear that to establish "due diligence" for purposes of §2244(d)(1)(D), the burden is on the petitioner who "must show some good reason why he or she  was unable to discover the facts at an earlier date." <u>Id</u>. 548 F.3d at 999.  Thus, "[m]erely alleging that an applicant did not actually know the facts underlying his or her claim does not pass the test. Instead the inquiry focuses on whether a reasonable investigation ... would have uncovered the facts the applicant alleges are newly discovered." <u>Id</u>.(citing <u>In re Boshears</u>, 110 F.3d 1538,1540 (11th Cir.1997)(quoting 28 U.S.C. § 2244(d)(1)(D)) . The Court is to make this determination on a case-by-case basis and consider whether, under the circumstances presented, the petitioner should have been expected to take actions which would have led him to the information. <u>Rowell v. McNeil</u>, 2009 WL 559528, *4 (N.D. Fla. March 4, 2009)(<u>quoting</u> <u>Wilson v.Beard</u>, 426 F.3d 653, 661–62 (3d Cir.

2005) for the proposition that whether a habeas petitioner has exercised due diligence is context-specific, and the essential question is "whether the petitioner should be expected to take actions which would lead him to the information.")

In the instant case it is clear that the facts making up Petitioner's newly discovered evidence claim could easily have been ascertained through the exercise of due diligence long before Eddie's Affidavit was provided. As a preliminary matter, considering the seriousness of the charges leveled against Petitioner and the fact the case itself involved accusations of child molestation, it was incumbent upon Petitioner to question all likely witnesses before trial, which would include Petitioner's son Eddie, regarding the basis of their testimony and the motivation behind any testimony deemed unfavorable to him. Add to this, the fact that it is not or cannot reasonably be disputed that at least by the time of trial in October 1999 , Petitioner knew Eddie to be a witness for the prosecution, was present at trial when Eddie testified to facts that were corroborative of the victim's story and known by Petitioner to be lies, was present at trial when Eddie testified to personally witnessing events that involved Petitioner and which Petitioner claims never to have happened, was present at trial when the victim testified to discussions had between Eddie and the State Prosecutor and detective assigned to the case, and that one of Petitioner's primary theories of defense was based on allegations of prosecutorial misconduct, and Petitioner's contention that the facts underlying his newly discovered evidence claim could not have been discovered by him before the submission of the subject

16

affidavit until well over a year after entry of final judgment, becomes incomprehensible [15]

The Court observes that at the October 27, 2009 hearing before the undersigned, Petitioner claimed to be unable to recollect virtually any details regarding the substance of either the victim's or his son Eddie's testimony with regard to the case against him, whether at deposition or at trial. See, e.g. HT 13-14, 18, 20-22. While the Court does not expect Petitioner to recall with perfect precision every detail that occurred ten years ago, the undersigned finds it difficult to believe, given the seriousness of the charges leveled against him, his educational

---

[15]   October 27, 2009 Hearing Transcript ("HT"), 13-14, 22; September 1999 Trial Transcript ("TT"), 994-1001. The Court says "at least," because at the October 27, 2009 hearing before the undersigned, the Respondent referred to the victim's pre-trial deposition testimony in which the victim made reference to discussions that were had between the Prosecutor on the case and her brother, Eddie. HT, 42-44. When Respondent's attorney was asked for record citation to the deposition, she stated that since the deposition transcript has not been made part of the record in this case the Government was unable to cite to the pertinent portion of the transcript, and for that reason is "giving [Petitioner] the benefit of the doubt" and claiming Petitioner first learned of the facts making up the newly discovered evidence claim at trial. Id. at 42. If, however, deposition testimony does indeed exist in which reference is made to conversations had between Eddie and the Prosecutor, and knowing as Petitioner surely did that Eddie was supporting his sister's position in the case, and given that one of Petitioner's primary theories of defense was Prosecutorial manipulation and intimidation, this reference to discussions had between the Prosecutor and Eddie should have alerted Petitioner to the facts underlying his newly discovered evidence claim even earlier.  As such, at the very least, due diligence would have required that Petitioner depose Eddie at this early stage of the proceedings and before trial to determine both the substance of his testimony and the motivation behind what Frederick clearly viewed to be blatant lies on Eddie's part. This questioning, in turn, could, and in this Court's view likely would, have led to the factual basis underlying Petitioner's claims of newly discovered evidence.

17

background, his relatively high degree of intelligence, and his former position as a police officer, the unusually high level of lack of recall Petitioner claimed to possess. The Court simply finds Petitioner's testimony regarding his extraordinary high degree of forgetfulness not credible.

The Court also notes that given Petitioner's status as a former police officer, it is difficult to believe Petitioner was as "ignorant" of the law as he makes out, <u>see</u>, <u>e.g.</u>, HT p. 20, where Petitioner states that he "left everything in the hands of [his] attorney because [he] was not skilled at even what was going on on that side of the law," and other similar comments. As a former police officer Petitioner is presumed to have known there would have been an active investigation conducted behind the scenes prior to trial and that part of this investigation would have involved interviews of family members, particularly the victim's brother Eddie, who for much in the time in question shared a room with the victim, as well as any other individuals close to the victim.  Upon learning that Eddie's interview responses and deposition testimony were corroborative of his sister's position and disadvantageous to his own, he would have been alerted to the fact that Eddie's trial testimony, at least insofar as Petitioner was concerned, was going to consist mainly of lies.  Under these circumstances, due diligence would have required that Frederick depose Eddie and question him to determine not only the substance of the testimony to be given at trial, but the motivation behind it, such as whether anyone, <u>e.g.</u>, the prosecutor on the case or the detective in charge, promised him anything in exchange for his testimony or in any

18

other way coerced him to testify untruthfully.

If Frederick wasn't alerted before trial to the possibility that Eddie's motivation to testify falsely may have resulted from undue prodding or improper influence on the part of the State Prosecutor assigned to the case, he was certainly made aware of this fact at trial when his own attorney submitted to the jury as Petitioner's primary defense, the manipulation and intimidation of the victim to testify in a way the Prosecutor and the detective wished, rather than in a way which was truthful. Thus, in defense counsel's opening statement, he highlighted the role the government played in bullying the victim to stand firm in her initial accusations against Petitioner, even though later indications saw her waver on the truth of these charges, and even though she was heard on more than one occasion to state to friends and acquaintances alike that the accusations against Petitioner were really lies. This can be seen in Petitioner's counsel's opening statement where, in referring to the victim's alleged retraction of her accusations, counsel stated:

> But when she [the victim] tried to undo the damage that she had done, when she went and talked to Detective Olsen in late August of 1998, nobody would listen. And the authorities insisted that she stick with the first story that she had told detective Olsen, because to do otherwise would quote/unquote, screw up the case...

Trial Transcript ("TT"), p.737.

Later, in the same opening statement, Petitioner's counsel accused Detective

Olsen of "manipulating and intimidating" the victim to stick with her story, even after the victim, upon coming home from a visit with friends of the family in Ft. Myers, informed Detective Olsen of her candor when she earlier had informed her Ft. Myers' hosts of the fact she "had lied to Detective Olsen" about the incidents that occurred and only stuck to her untruthful account of the events in question because of the government's bullying.   TT at 739.   Then, in accusations aimed directly at prosecutorial misconduct, Frederick's counsel informed the jury of how

> [the victim] went into [the prosecutor's] office and said: the things I told Detective Olsen are not true. I've been doing this out of rebellion. I'm not being influenced or forced by anybody to do this. I lied. [the prosecutor] refused to believe her...In fact it appeared that one of the people in that room–that it was the prosecutor who was intimidating [the victim] and pressuring her to go back to her original story... .

Id. at 741.

Again, the factual predicate of Petitioner's "newly discovered evidence" claim is an August 28, 2003 Affidavit of Petitioner's son, Eddie, in which Eddie maintains that he testified untruthfully at trial at the prodding of the Prosecutor who told him to testify in a manner that would corroborate his sister's version of the events.  One example in Eddie's Affidavit of his testifying untruthfully is at paragraphs 3 & 4 of the Affidavit in which Eddie states there were a number of things he testified to at trial as having first hand knowledge of, which in reality he did not, including his testimony that he overheard a conversation between his mom and dad in which he heard his

20

mom tell his dad, "If I find out you did anything more, I'm leaving you." Eddie Aff.,
p.1. According to the uncontested proffer by the State, this was testified to by Eddie
at both his trial, (TT 1,565) and at his deposition (HT, pp. 56-57).

While Petitioner admits to being present at all times during the trial, he denies
having heard this exchange.  HT 13-14, 22. The court finds it stretches credulity
beyond reason to believe that Frederick would not have heard this testimony and
remembered it. This is, after all, crucial testimony of his son at a trial in which
Petitioner's liberty hangs in the balance, in which his son is describing an exchange
that allegedly took place between his father, the Petitioner, and his mother, which
Petitioner denies ever happened.  HT at 13-14.   The obvious response to hearing
this testimony of his son---testimony which Petitioner claims is a bald-faced lie--
would be to think to himself, "hey, that didn't happen. Why would my son lie about
this?"  This realization, coupled with the knowledge that his son had been involved
in communications with the Prosecutor and detective assigned to the case and his
own theory of defense which was based on allegations of prosecutorial misconduct
in the form of manipulation and intimidation, should inexorably have led Petitioner
to the obvious next step of cross-examining his son to determine both the substance
of his testimony and the motivation behind his presumed lies.

Another example of trial testimony that clearly and unmistakably should have
put Petitioner on notice of the necessity to cross-examine Eddie regarding the
substance of his testimony and the basis behind it, was information that came out

at trial during the victim's cross-examination that the State had at least one conversation with Eddie prior to trial regarding his sister's allegations that appeared corroborative of her testimony.  TT. 1001.  Even with this testimony, Petitioner, who admits to being present during all times at trial, HT 13-14, 22, failed to cross-examine Eddie on this point, and as the Government correctly observes, failed to do so at his peril.   While at the hearing before the undersigned the Petitioner claimed not to recall having heard this testimony at the trial,  HT 22,  once again the Court finds Petitioner's lack of recall on such an important issue to be not credible.

To combat Respondent's claims that Petitioner could have deposed or cross-examined Eddie regarding the substance of his alleged lies and the motivation behind them, and in this way discovered the facts underlying his newly discovered evidence claim, Petitioner  argues that any such questioning in this regard would have been futile.  According to Petitioner, any such questioning would have been unproductive because it's not reasonable to assume that if questioned in this manner Eddie would have admitted both to his plan to testify falsely and to the fact the motivating force behind such plan was prosecutorial coercion.   Not only is Petitioner's argument based on pure speculation, but by linking Petitioner's obligation to take even the most minimal and basic of actions to uncover the facts underlying his newly discovered evidence claim, to the action's likely success, Petitioner has inserted a subjective element into the standard which effectively reads "reasonable" out of the "due diligence" equation. While it's true, as Petitioner claims,

that due diligence under § 2244(d)(1)(D) "does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option,..."[16], even Petitioner admits that "due diligence" requires a petitioner to undertake "reasonable efforts." Id.

The Court agrees with Respondent when it argues the instant case is directly on point with Melson v. Allen, 548 F.3d 993 (11th Cir. 2008), and based on the reasoning therein mandates denial of Petitioner's claim.  In Melson, the Eleventh Circuit affirmed the lower court's denial of a murder defendant's attempt to utilize §2244(d)(1)(D)'s "newly discovered evidence" provision to trigger a new one-year limitations period, finding the alleged newly discovered evidence, which consisted of several witness affidavits recanting trial testimony, could have been discovered earlier by Petitioner through the exercise of due diligence. Id. at 999.  One of the affidavits relied upon by the petitioner in Melson was from a state witness, Melissa King, who, like Petitioner's son Eddie in this case, claimed that pursuant to instructions from the government, she testified falsely at petitioner's trial.  According to King, even though she saw petitioner Melson on the night of the murder and thus could have furnished him with an alibi, she testified falsely at the trial to not having seen petitioner on that night, after being instructed by the government to lie in this manner. Id.

The Eleventh Circuit denied invocation of §2244(d)(1)(D), finding that even if

---

[16]  See Petitioner's Final Summation (D.E. #68, p.3),

King's affidavit were true, petitioner would most certainly have known before trial that he saw and spoke to King that night, and therefore could have easily discovered the information contained in King's affidavit, as well as the other affidavits, through due diligence. Id. at 1000.   In reasoning directly applicable to this case, the Eleventh Circuit, in addressing the King affidavit, noted that petitioner Melson could have questioned King before trial about any statements she made to the police as well as cross-examined King at trial about her statements to the police and whether they asked her or coerced her in any way to testify falsely. Id. By failing to question King in this manner, the Eleventh Circuit held that petitioner Melson failed to act with due diligence and, as such, was ineligible to invoke §2244(d)(1)(D)'s "newly discovered evidence" exception to extend AEDPA's one-year limitations period .

The parallels between Melson and this case could not be any clearer. Here, just as in Melson, as soon as Eddie testified to overhearing an exchange between Petitioner and Petitioner's Wife which Petitioner denies ever occurred, Petitioner was on notice that Eddie was lying. HT at 14. At that point, it was incumbent on Petitioner to question Eddie about his testimony and to inquire as to the reason for his lie and whether anyone, including the government, was responsible for his false testimony. He was also put on notice when the victim, during cross-examination, testified to the State having had conversations with her brother Eddie prior to trial which were at least, in part, corroborative of her version of events TT. 1001.   Once again, this testimony made it incumbent on Petitioner to question Eddie about the motivation

24

behind what Petitioner knew to be Eddie's lies and to inquire of Eddie as to whether he was in any way coerced by the State to give corroborative evidence. By failing to follow-up on this line of questioning, the Petitioner in this case, like the petitioner in <u>Melson</u>, failed to act with due diligence in discovering the factual predicate for his claim.

Indeed, one could argue that with Petitioner's background and experience as a former police officer, the notice provided Petitioner to question Eddie, not just at trial, but before trial, was even greater than that provided the petitioner in <u>Melson</u>. As a former police officer, Petitioner certainly would have been aware that in his case, with a charge of child molestation looming, there was bound to be a detailed and thorough investigation conducted which would include in-depth interviews with those closest to the victim. Petitioner must have known that of those considered closest to the victim, Eddie, the victim's brother, who shared a room with the victim for much of the time the alleged molestation was claimed to have taken place, would have figured prominently. Armed with this knowledge, and the knowledge that Eddie was a witness for the State, should have alerted Petitioner to the link between Eddie's lies and Petitioner's theory of government manipulation.

Under these circumstances, due diligence required that Petitioner depose Eddie prior to trial, or at the very least should have alerted Petitioner to the need to cross-examine Eddie at trial to determine not only the substance of his testimony, but the motivation behind it, such as whether anyone, *e.g.*, the prosecutor on the

case or the detective in charge, promised Eddie anything in exchange for his testimony or in any other way coerced him to testify untruthfully. Petitioner's failure to do any of these things resulted in a lack of due diligence on his part in discovering the factual predicate for his claim.  Accordingly, finding that Petitioner lacked due diligence in discovering the factual predicate for his "newly discovered evidence" claim, the undersigned finds that §2244(d)(1)(D)'s later start date is unavailable to Petitioner.  As such, the undersigned respectfully recommends the Petition be deemed time-barred in that approximately 491 untolled days elapsed between the date Frederick's Conviction became final on July 3, 2002, and the date on which he filed the instant Petition on March 28, 2006, thereby exceeding AEDPA's mandatory one-year limitations period. §2244(d)(1)(A)-(D).  In accordance with the above and foregoing, it is hereby

**RECOMMENDED** that Frederick's Petition for Writ of Habeas Corpus (D.E. #1) be **DENIED**.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections to it, if any, with the Honorable Donald M. Middlebrooks, United States District Judge.  Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein.  Resolution Trust Corp. v. Hallmark Builders, 996 F.2d 1144, 1149 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745, 749 (11th Cir. 1988).

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Florida,

26

this 6th day of May, 2010.


_____
LINNEA R. JOHNSON
UNITED STATES MAGISTRATE JUDGE


CC:   Hon. Donald M. Middlebrooks
      All Counsel of Record